Elizabeth Hopkins Good morning. May it please the Court? I'm Elizabeth Hopkins here for the Plaintiff Appellant, Ryan S. If the Court allows, I'd like to reserve three minutes of my time for rebuttal. Ryan S. is in recovery from substance use disorder after he received two years of treatment at two different outpatient facilities in New York. His health and other related corporate entities that administered Ryan's ERISA-governed health care plan paid absolutely nothing on many hundreds of claims his providers submitted on his behalf during this two-year period from 2017 to 2019. They paid only small amounts and thus underpaid on a handful of claims, and they failed to even decide many of the claims, such as a determination that all substance use disorder and mental health disorder services had to be bundled into a daily rate. In other words, an office visit, for instance, had to be bundled and paid together with a lab visit in a manner that was not required for medical and surgical claims. And the defendant's nearly wholesale failure to decide and pay Ryan's claims took place during a period when the California Department of Managed Health Care determined that United was applying a computer system that they called ALERT to scrutinize claims for substance use disorder once a claimant had reached a predetermined limit on the number of mental health or substance abuse claims. Ryan alleges that this system or some variant of it, something like it, was applied to him and to his claims as it was to many others. And that's why month after month, claim after claim was left unpaid by Ryan's health care plan, leaving him with hundreds of thousands of dollars in bills. And this ALERT system is only used, these algorithms are only used for mental health and substance abuse claims and not other claims, or is it used more broadly than that? No, the finding was that it violated MAPEA, the Mental Health Parity and Addiction Equity Act, which are the parity claims that issue here. And that was specifically the finding of the Managed Health Care Department that it was not MAPEA compliant because it was only applied to these kinds of claims. So the question presented here is whether in stating these facts, to put it in terms of Judge Clifton's colorful metaphor in the previous case, whether Ryan has plausibly stated enough smoke to infer that there was fire here, that defendants acted in violation of their fiduciary duties, violated ERISA's mental health parity requirements and the terms of his plan, which required the coverage of medically necessary substance use disorder treatment. The answer is yes. This court previously determined that Ryan had stated a claim on these facts for purposes of Article 3 standing, and likewise, Ryan has stated a claim that defendants violated their fiduciary duties and the parity provisions and terms through a system that, in design and in effect, denied almost all of the hundreds of claims for outpatient treatment, for auxiliary services and for clinical labs that were submitted on his behalf for the treatment of his substance use disorder and comorbid mental health disorders. The potential problem here for your client is that he's not inside. He can't be a defendant. I'm going to re-debate the prior case. The allegations there were made by people who had been employees of defendants and purported to be whistleblowers at least up to a point, and your client is the victim in the sense that he's got claims that were denied, but it's hard to patient about whom he knows or alleges anything. How do you get past that problem? Well, Your Honor, the indications of the system that was applied here, I think he may be a single plan participant, but this was a long treatment period for him, and he was getting a lot of hundreds of his claims. Combine that with the fact that the Department of Managed Healthcare Service found that there was such a system in place during this very period. I think one other point that I didn't raise previously that I think is probably telling is during earlier treatment is like, it tends to take a while, but during earlier periods before 2017, Ryan alleges, and it's the truth, but all of his claims were paid at least in part. We might think that some of them were underpaid. The case is not about that. They were being paid. Then there was the implementation of the system, and we think that given the fact that hundreds of his claims during this two-year period, almost all of his claims, the lion's share of his claims were denied, is indicative, or at least allows this court to plausibly infer that there was a system in place that was being implemented. I think that is really how you can get past the concerns that the district court expressed, and I think perhaps Judge Collins expressed in his dissenting and partially concurring decision on the last go-around to the Ninth Circuit. I would also like to, yes. I was just going to ask, this seems to be a novel issue. What standards should be applied to allege a claim under the Parity Act? Do you have a recommendation as to what would be an appropriate framework to follow? Yes. Well, at a minimum, we're not alleging that there was a term in the plan that only applied to mental health or substance use disorder treatment. So looking at various terms of the plan, as some courts have, would not be appropriate here. This is an as-applied kind of standard. You're alleging a violation of plan terms. Are you no longer alleging that? We are, Your Honor, but that's a separate claim. That's a separate allegation. But with respect to that, those very terms, the requirement that medically necessary treatment be covered by the plan, that as applied, that was applied differently to mental health claims and substance use disorder claims than it was to medical and surgical claims. And that is exactly what the California Department of Managed Care found. Obviously, they didn't name our client. They didn't say with respect to his claims. But again, they found that United employed a system to do exactly that during this period at issue and that that violated parity requirements and conducted a lengthy experiment. Obviously, a state agency like federal agencies, like the Department of Labor, can conduct an inquiry like that before bringing charges, before, you know, making a finding, but we're not able to do that. Nevertheless, I think that it's very telling what the Managed Care Department found. They said that Optum, which is one of the defendants in this case, and one of these subsidiaries of the larger United system, and this is a quote, implemented this process, meaning the alert system, which resulted in limitations being placed on ongoing MH, meaning mental health treatment. And here's another quote, no comparable system or process existed for medical and surgical services, and that this was, quote, not ERISA compliant. You know, the I think United is trying to say this isn't exactly on all fours. And, you know, argues that this wasn't a finding that Optum denied any claims on this basis. I don't think that's correct. I think they had plenty of evidence that Optum was applying this additional scrutiny in order to deny claims. And, you know, certainly on a motion to dismiss, the court doesn't have to favor and shouldn't favor United's interpretation. Am I correct in saying that the district court didn't really consider the California agency's report because it thought that that report only related to a pre-authorization claim? I, I'm, I had trouble understanding, you know, what, what the district court was, was saying about, about that, but it certainly, certainly that's not what we're alleging in that. And, you know, we're, we're alleging that this supports, you know, all of the denials, particularly the denials of outpatient treatment and labs during this period, which is, you know, which is what is, which is what remains at issue in this case, as well as what we call auxiliary services. So, you know, I, I, I had a little trouble following what the district court, you know, thought about what the Department of Managed Care did. But, you know, I, in my, in my view, certainly supportive of an inferential claim that this system was applied in exactly the same manner to our, you know, client, to the plaintiff in this case, as it was to many others. I mean, certainly the Department of Managed Care was, was looking at this across a broad range of, of, of, of clients and, you know, not just one person. So, I really think that all of that put together gets us past the Rule 8 pleading standard, which is, you know, not, you know, it's, it's a standard of plausibility. It, you know, and I, I think that this all supports it, both for the mental health parity claims, and for the fiduciary breach claims as well, that, you know, that, that this was improper, something was, something was going wrong here, and that all of these claims were denied, hundreds and hundreds of claims were denied, or some of them, many of them left undecided during this period. Just a word about the fiduciary breach claims, that United refers to the Baffert versus Northrop and says that there are no fiduciary breaches alleged here, because, because, you know, they say that's what Baffert held. But the claims in this case, unlike in Baffert, don't involve the calculation of benefits under a plan formula by a third-party service provider. They, the, the allegations here turn on indisputably fiduciary activity of deciding benefit claims, and the breach is that we allege that these, this, this decision-making process was a violative claims processing system that was applied over many years by the designated claims administrators of the plan. Did you want to leave a little time for rebuttal, because you're down to a minute and a half? Oh, yes, I would like to. Thank you. The court has no further questions. I will reserve my remaining time. Okay. Okay, Ms. Ross. Thank you, Your Honors. Good morning, and may it please the court. April Ross on behalf of the appellees and the defendants below the United Healthcare entities. Your Honors, the plaintiff in this case made a choice. The crux of his complaint is that he submitted claims for benefits, and some of those claims were not paid or were not paid to the extent that he wishes they had been paid. He does not and has never brought a claim for wrongfully denied benefits under ERISA, and he did not ask the district court to award him benefits under the terms of his ERISA plans. Instead, he has brought a broad claim for equitable relief under ERISA's catch-all provision, which is section 1132A.3, alleging that specific and purportedly categorical practices for handling particular types of claims breached nine different defendants' fiduciary duties to him and to hundreds, members of hundreds of other California benefit plans, and further, that those practices violate the Federal Mental Health Parity Act and the terms of those plans. This court has already found the plaintiff lax standing to pursue three of the practices alleged in the complaint. So we're aware of that. Can you focus on the Parity Act claim related to the California agency report and the use of this alert system only applicable to mental health and substance abuse claims and not to other medical and why isn't that sufficient to push this past the Rule 8 stage? Your Honor, it's not sufficient for several reasons. First, there are no allegations in the complaint that this alert system was ever applied to this plaintiff or to any of his denials. What he alleges is that his claims were denied because insufficient information was submitted, insufficient documentation, or because the services were not covered under his plan. But if there's some indication that some broad system is being applied unequally to certain types of claims throughout a different claim process, why isn't it reasonable for us to infer that the substantial denial of his claims were also as a result of the application of this system? Well, Your Honor, because when you look at the DMHC's determination or its report on the alert system, it is clear from that report that alert does not result in denials of claims. Alert triggers pre-authorization and this court has already found that plaintiff does not have standing to challenge pre-authorization because none of his claims were denied. But alert seems to go beyond pre-authorization. It also speaks to other levels of care and seeing if certain criteria is met and then it goes through a peer review process. So the report seems to indicate that this alert system extends beyond just a pre-authorization decision, does it not? Well, Your Honor, what the alert system can do is trigger a peer review, which is a review to determine whether or not the treatment is necessary. Plaintiff notably does not allege that any of his claims were denied for lack of medical necessity. Isn't that what discovery would reveal? All we have to do is figure out is it plausible enough to allow the plaintiff to get to a discovery phase to determine whether this system did in fact get applied adversely to him? And to others. I'm sorry, Your Honor, in this case, plaintiff already has that information. After he filed his first complaint in this case, the parties met and conferred and our clients provided to his counsel his administrative record that includes his plan document, the documents explaining all of the claims that were submitted on his behalf by either him or his providers, how those claims were adjudicated and why they were approved or denied and the payments that were made on those claims. So, he would already know based on those and would have been able to plead based on that record that he had denials based on this program or based on medical necessity. He's had four opportunities since then to file his claims in this case and then plead it. Just to clarify, if the alert system led to a peer review process that led to a denial of a patient, that information would be contained in a person's administrative record. This overall alert process would also be included in that patient's case file? Your Honor, he would have received notice that his claim was denied for lack of medical necessity. No, that's not my question. My question is whether the case file itself would disclose that an alert system is being used in a way that resulted in his denial of his claim. Would that, just in general, would that appear in someone's case file? Your Honor, we did produce to him the internal clinical notes related to his claims which would include that information. That would include the record of the peer review as well as the EOB use that would show the reasons for those denials and it is telling that after four opportunities, plaintiff has never pled that that occurred in his case and he's had many chances to do that. The other point I want to make with respect to alert, Appellant Counsel suggests that because his earlier course of treatment had approved claims and his later did not, raises an inference that this program was applied to his second course of treatment. But in fact, if you look at the DMCH report, what we see is that the period of time that the agency looked at into the alert system in that report was January to October 2016, prior to his first course of treatment. So, there is no valid inference to be drawn from the payment of earlier claims and denial of later claims that would tie in any way to this report or to this purported system. What we have here are allegations that the plaintiff submitted claims and the claims weren't paid and we have at some point. What we do not have are any factual allegations after multiple pleadings connecting those things, despite the fact that the plaintiff has the information that would permit him to do that if in fact that had occurred. So, this is not a case where discovery is needed to understand that. We've given him those records. Well, I'm not sure he could find that simply from his own records. I haven't looked at what you referred to. But what concerns me about the plan conclusion or findings, and I'm not saying they're conclusive, but they do seem to say that you can't conclude the benefits are comparable or that the review is equivalent or not more stringently than what is used with regard to medical and surgical claims. And that seems to be the thrust of the case and seems to be the thrust of the Parity Act. And we've got this California State Report, which can be the subject of evidentiary debate, but at this point does seem to say, at least at a point in time not so distant from what we're talking about here, that your client's system didn't treat them the same way or didn't provide for the same review of the two categories. How can we disregard that? Again, Your Honor, ERISA has a causation requirement. It is very clear from the case law, from the Supreme Court, from this Court, that you must have allegations plausibly connecting the alleged injury here, the denial of benefits, to the practice that is being challenged. That is what we do not have here. And were it the case that any plaintiff who had a claim denied could point to this report and say, I have now met my obligations to plead a Parity Claim, then the Parity Act would have no meaning and everyone would be able to plead a Parity Claim with no connection to that practice. I'm not sure we mean the Parity Act would have no meaning. The Parity Act is exactly intended to address what was perceived as a broad problem, at least prior to the enactment of the Parity Act, a broad concern about medical and substance abuse claims being treated differently than medical and surgical claims. And the state report seems to say, yeah, that's still going on. And so I'm not sure I understand how the plan or the report by the state helps fend off or make less plausible the allegations of the complaint. Well, Your Honor, again, the allegations of the complaint, which we must take as true, allege only that the alert system applies to pre-authorization requirements, which again, is no longer an issue in this case because plaintiff concedes that he received all of the pre-authorization. And he also identifies no analogous services to which were treated differently or less restrictively than his claims here, because again, he does not connect his denial of benefits. He alleges that his benefits were denied because they either sought non-covered services or because he failed to submit sufficient documentation or information on those claims. He does not allege a denial based on medical necessity. He does not allege a denial based on lack of authorization following the review. He does not allege anything that would connect plausibly his claim to this. What he has done at most is suggest that it is possible. The Supreme Court was very clear in Quambly and Iqbal and cases following that, that possibility is not the standard. If you have an allegation bolstered by the state report that the company was applying different standards to these two categories, what makes implausible the allegation that that differential application of standards wasn't limited to pre-authorization but filtered through the entire review process? Indeed, if I look at the, granted it's the executive summary, but as expressed in the state report, the focus survey table of findings, number one, doesn't limit itself simply to the pre-authorization category. It speaks broadly that it can't be concluded that the company didn't apply requirements more stringently to one category than to the other. Your Honor, again, I think it's very clear from that report and has not been alleged otherwise in this case, alert does not result in denials. It does not submit a blockade after which all claims are denied. It is at most, if it is applied, and again, no allegation that it was applied here despite him having the entirety of the record that would allow him to determine that. If it had been applied, there would have been a peer review. A determination would be made based on medical necessity criteria, which the plaintiff does not challenge in this case, nor does he allege that there was any denial of benefits as a result of a medical necessity review. So again, these things are simply not plausibly connected and as Judge Collins found previously and as the district court found here, at most what we have are conclusory assertions that these things are connected and an expectation that that will be enough to open the doors to broad discovery into the practices of the company with respect to both mental health and medical surgical benefits. With respect to Judge Collins' dissent, it was, after all, a dissent that did not carry a majority, and I'm not sure I'm persuaded. Indeed, I'm struggling with this case, but the fact that the company uses or was found to use a system that applied more stringent standards to one category than to the other, the fact that the report was focused on this particular prequalification element doesn't assure me that the same motivation doesn't pop up in other places. Can you point me to anything that should alleviate those concerns or should, more to the point, should make the allegations less plausible than they're required to be to survive the review at this stage? Your Honor, the fact that a practice or process may exist does not mean that it gives rise to a plausible claim for this plaintiff and that, in fact, the court recently addressed this, the Ninth Circuit recently addressed this in the Witt case, finding that the fact that the plaintiff's challenge guidelines that they alleged were not consistent with generally accepted standards of care did not give rise to their claim if they could not show that their benefits were denied because of those provisions in those guidelines. And here, that's what we have. We have an allegation that a practice exists. We have an allegation that claims were denied. We do not have any well-plaid factual allegations connecting those. And if this had been the plaintiff's first complaint and if the plaintiff had not had access to any of his record documents, we may be in a different situation. But this was the plaintiff's first complaint. And this is after the production of his record to him in the course of the party's work in this litigation. What about the, I'm sorry to interrupt, but what about the other allegations about auxiliary treatments and how there's a disparate treatment between substance abuse treatment and corresponding care for chronic disease and cancer patients? Or the laboratory allegation that laboratory costs are treated differently for substance abuse treatment than they are for other medical claims. Why aren't those allegations specific to suggest that there are other forms of disparate treatment occurring in the company as well? Sure, your honor. I'll take those one at a time because I think they are separate issues. With respect to the laboratory services and the allegation that a letter was sent to one of plaintiff's providers suggesting that those services needed to be billed into a bundled service for each day of treatment. The allegations in his complaint with respect to this, which are very limited and appear solely in a footnote in the complaint, show that the letter was not a denial of coverage, but instead a request to his provider for reimbursement, which is a practice that this court has already found no standing to challenge. And in any event, plaintiff does not identify any corresponding medical or surgical service, much less facts, suggesting that practices are less restrictive than the bundling issue that he describes here. So I think with respect to that, we simply don't have any facts to suggest, one, that he has standing to challenge it, or two, that it would rise to the level of a Parity Act claim. Your honor, I see my time is up. I would like to answer the second part of your question if that's okay. Please go ahead. Okay. With respect to the treatment protocol, the reference to treatment protocols for cancer and other chronic diseases, again, the plaintiff does not identify how those are analogous to the treatment at issue here, what the practices are that apply with respect to any of those conditions, and does not identify how they may be different or less restrictive than any practice identified here with respect to his claims. I mean, this goes back to what you know about your own stuff. Let's say you've got substance abuse issues. If you're not also a cancer patient and have visibility into what might be happening with other claims, how does someone make out a Parity Act claim in that circumstance? Are you asking for something more restrictive than what Rule 8 requires, which is just plausible allegations? What's the standard that you think a hypothetical plaintiff should meet in order to make out a more plausible claim in your mind? Well, your honor, I think a number of courts have addressed this, and I'd refer the court specifically to the Kristen W. v. California Physician Services case out of the District of Utah, which has a lengthy discussion about the standards that would apply in an as-applied Parity case and the pleading burden placed on the plaintiff in that case. And what the court there says is that a plaintiff asserting an as-applied claim for discrimination under the Parity Act must do more than state conceptually that the mental health services were treated worse than other services. They must allege facts showing disparate treatment. The court clarified extensive specific facts are not required, but some facts are. And it is not sufficient to simply say there is a service. As the court said there, without facts about actual as-applied analogous medical treatment coverage, there can be no comparison and thus no claim because the Parity Act is inherently a comparative claim. And if we do not have the facts on both sides of that comparison, we haven't stated a plausible claim. Your honor, unless you have other questions, I see that I'm welcome. I don't, and let me see if my colleagues have any other questions. No, thank you. Thank you. I know I, should I start? I know I don't have too much time here, but I'd like to just address a couple of things on rebuttal if I could. Ryan does say that the alert system or some comparable system, something like it was applied to him and to his claims, and that explains why hundreds of We do allege that each of his claims for treatment were medically necessary. We don't say that they were not medically necessary. We refer to some things that United said in denying the claims that we disagree with. We think each of those claims was medically necessary, and we allege that. We didn't get the entirety of the record, not even close. What we got was some self-selected documents that United refers to as the administrative record, but we didn't get any discovery in this case. We didn't get depositions. We didn't get requests for admissions. We didn't get interrogatories, and we didn't get fulsome or really any discovery into documents other than, again, self-selected documents that United produced. It's not surprising that United would not have disclosed that they were using alert or some other system, because those systems are improper. They're improper as a matter of fiduciary duties, and they're improper under mental health parity provisions. I'd just like to close by saying Ryan didn't have a claim denied. He had hundreds of claims denied. I was surprised to hear the suggestion that we're precluded here from our claims because Ryan didn't bring claims for benefits under the provision in Section 502A1B that allows him to do so, but that's because he thinks that this system that was applied to him was improper and was aimed to deny his claims wholesale, and that is supported by the allegations of what happened to Ryan and of the findings of the state agency. So I would just like to end by saying all the rest of these issues are factual issues. We ask the court to, again, reverse the dismissal of this case and allow Ryan to proceed with discovery into the reasons why United paid nothing on this case. Thank you, Your Honor. Thank you, Ms. Hopkins, and I thank both counsel for your helpful arguments. The matter will stand submitted, and court is adjourned. All rise. This court for this session stands adjourned.
judges: CLIFTON, SANCHEZ, Korman